UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 08-60-DLB

BRENDA K. DAVIDSON                                                                           PLAINTIFF

vs.                       **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION                                              DEFENDANT

\* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Brenda Davidson filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) payments on September 14, 2004. (Tr. 17). At the time of filing, Plaintiff was 43 years old and alleged a disability onset date of March 27, 2004. (Tr. 17, 24, 53). She asserts she is disabled due to chronic lower back pain, knee pain, carpal tunnel syndrome, sleep apnea and depression. (Tr. 441-44). Her application was denied initially and on reconsideration. (Tr. 39-40, 46-53). At Plaintiff's request, an administrative hearing was conducted on July 26, 2006, by Administrative Law Judge (ALJ) Charlie Paul Andrus. (Tr. 435-62). On October 2, 2006, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI benefits. (Tr. 17-

1

25). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 13, 2008. (Tr. 4-6).

On April 10, 2008, Plaintiff filed the instant action in the Southern District of West Virginia. (Doc. #1). Due to Plaintiff's status as a resident of Kentucky, her case was transferred to this Court on April 15, 2008. (Doc. #1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #13, 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely

because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 19). At Step 2, the ALJ determined Plaintiff's degenerative disease of the spine and knees, sleep apnea, and depression to be "severe" impairments within the meaning of the regulations. (Tr. 20-21).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-22). Specifically, the ALJ evaluated Plaintiff's physical and mental status under Listings 1.00 (Musculoskeletal System), 3.10 (Sleep-related Breathing Disorders) and 12.04 (Affective Disorders), concluding that Plaintiff's condition did not meet or equal the requirements of any listing. (Tr. 21-22).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a limited range of light, unskilled work. (Tr. 22-24). Specifically, the ALJ found that Plaintiff can "lift/carry 20 pounds occasionally and 10 pounds frequently," may "occasionally climb, stoop, crouch and kneel,." and is mentally capable of "understand[ing] and recall[ing] simple material, concentrat[ing] on simple tasks, and function[ing] in an object focused setting with little public contact." (Tr. 22). Plaintiff is limited, however, "to frequent handling with the left hand," and advised to "avoid work at heights or around dangerous machinery" and to "never subject her body to vibration." (Tr. 22).

Based upon these findings, the ALJ determined that Plaintiff's exertional and non-exertional limitations prevented her from performing her past work as a telecommunications installer, sewer in a sewing factory, non-government mail sorter, magazine assembly line worker, and cashier. (Tr. 24). At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines and testimony by a vocational expert (VE) to conclude that there exist a significant number of jobs in the national economy Plaintiff can perform despite her limitations, such as produce sorter, packing/shipping, assembler, grader/sorter, price marker, and packer. (Tr. 24-25). Consequently, the ALJ found that Plaintiff has not been under a disability as defined by the Social Security Act. (Tr. 25).

**C.    Analysis**

Plaintiff advances four arguments on appeal. First, Plaintiff argues that the ALJ improperly relied on testimony from the vocational expert that was inconsistent with the job classifications in the *Dictionary of Occupational Titles* (DOT). Second, Plaintiff

contends that the ALJ's credibility findings were flawed because he improperly discredited Plaintiff's testimony regarding the side effects caused by her medications. Third, Plaintiff asserts that the ALJ improperly considered Plaintiff's daily activities as evidence that she could perform substantial gainful activity on a full-time basis. Fourth, Plaintiff avers that the ALJ impermissibly substituted his own opinion for that of the Plaintiff's treating physician, Dr. Banks. Each of these arguments will be addressed in turn.

### 1. The ALJ Properly Considered the Vocations Listed by the Vocational Expert

Plaintiff asserts that the ALJ erred in accepting and relying upon the testimony of the vocational expert concerning the availability of suitable jobs in the national economy because the exertional levels of some of the jobs identified by the expert (produce sorter, packing/shipping, assembler, grader/sorter, price marker, and packer) exceeded Plaintiff's RFC. In addition, Plaintiff contends that several of the jobs listed by the vocational expert are not contained in the DOT. In other words, Plaintiff contends that the ALJ failed to resolve the conflicts between the vocational expert's testimony and the DOT, as required by Social Security Ruling 00-4p.

> Social Security Ruling 004-p provides in pertinent part:
>
> Occupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] or [vocational specialist] evidence to support a determination or decision about whether the claimant is disabled.

5

Social Security Ruling 00-4p (December 4, 2000): Titles II and XVI: Use of Vocational Expert and Vocational Specialist, and Other Reliable Occupational Information in Disability Decisions. This ruling "sets forth the actions required of an ALJ when there is an *apparent* conflict between the testimony of the vocational expert and the DOT." *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 374 (6th Cir. 2006) (emphasis added). It does not, however, address what an ALJ must do when a conflict is not apparent. "Under SSR 00-4p, the ALJ is entitled to evaluate the testimony of a vocational expert, the DOT, and other relevant evidence, but is not required to rely on any of these sources." *Id.*

Consistent with SSR 00-4p, the ALJ asked the vocational expert whether his testimony was consistent with the DOT. (Tr. 459). The vocational expert testified that it was. (Tr. 459). Davidson, however, did not bring to the attention of the ALJ the alleged conflict between the vocational expert's oral testimony and the job descriptions in the DOT. "[N]othing in the applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008). Because Davidson did not bring the alleged conflict to the attention of the ALJ, the ALJ was not required to inquire further into whether the vocational expert's testimony was correct, and was entitled to rely upon the expert's testimony to conclude that there exist a substantial number of jobs in the national economy that Plaintiff can perform, despite her impairments.

6

Additionally, "neither the DOT or [the expert's testimony] automatically trumps when there is a conflict." SSR 00-4p. In fact, as the Sixth Circuit Court of Appeals stated in *Wright v. Massanari*, 321 F.3d 611 (6th Cir. 2003):

> The implication of [the claimant's] argument is that the Commissioner should be bound by the Dictionary's characterization of these occupations. But this court has previously ruled to the contrary. In *Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995), the court held that the [administrative law judge] and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications.

*Id.* at 616. Therefore, the fact that several of the jobs cited by the vocational expert as "sedentary" or "light" are listed in the DOT at multiple exertional levels – including levels that exceed Plaintiff's capacity – is irrelevant, and the ALJ did not err when he relied upon the testimony of the vocational expert at Step 5 of the sequential evaluation.

### 2. The ALJ Did Not Err in Concluding that Plaintiff's Complaints of Side Effects Were Not Entirely Credible

Plaintiff argues that the ALJ erred in concluding that his testimony was not credible. Specifically, Davidson states that the ALJ should have concluded that drowsiness caused by several of her medications prevented her from working. The ALJ found Plaintiff's credibility to be "fair to poor," and noted that the record did not contain any documented instances of Plaintiff experiencing the side effects of which she complained during the administrative hearing: "She testified that her medications cause side effect of drowsiness and dizziness, but she did not report any side effects to Pathways." (Tr. 23).

Plaintiff's failure to report the existence of side effects to her mental healthcare provider is inconsistent with a claim of disabling side effects. *See Essary v. Comm'r of*

7

*Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make not indication that Essary reported such side effects to any of her physicians. Thus, based on the record before him, the ALJ did not err in finding that Essary suffered no adverse side effects from her medications."); *Steiner v. Sec'y of Health & Human Servs.*, 859 F.2d 1228 (6th Cir. 1987) (6th Cir. 1987) ("The claimant complained of side effects from his medication for the first time at the hearing, none of the medical reports indicate that he complained to a doctor about the side effects.").

"Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). Consequently, because the medical evidence in the record does not support Davidson's allegations that she is unable to work due to excessive drowsiness caused by her medications, the ALJ did not commit reversible error in discrediting Davidson's testimony regarding the side effects of her medications.

### 3. The ALJ Properly Considered Plaintiff's Daily Activities

Plaintiff contends that the ALJ improperly considered Plaintiff's ability to perform limited daily activities as evidence that she could perform work activities on a full-time basis. During his discussion of Plaintiff's RFC, the ALJ noted:

> She has one or two nights of sleep and is able to take care of her personal needs. She cooks a little but her son will fix his own breakfast. She testified that she naps during the day . . . . She sits on the porch and lies on the couch if she is having a bad day. She is able to do a little bit of dishes and laundry but her sister does the rest. She has no hobbies and is not a member of any social group. She has given up playing tennis, bowling, and dancing.

8

(Tr. 23).

Plaintiff's argument that the ALJ's consideration of her daily activities constitutes reversible error fails for two reasons.  First, Plaintiff mischaracterizes the manner in which the ALJ used Plaintiff's testimony about her daily activities.  The ALJ did not, as Plaintiff contends, deny Plaintiff benefits because she retains the ability to perform limited daily activities.  Rather, the ALJ considered Plaintiff's reported daily activities as one piece of evidence among many- including Plaintiff's medical history and opinion evidence – which informed his RFC determination.

Second, the ALJ's consideration of Plaintiff's daily activities was entirely proper as the Social security regulations provide that a claimant's daily activities are relevant to the determination of the intensity and persistence of Plaintiff's symptoms.  20 C.F.R. § 404.1529(c)(3)(i), 416.929 (c)(3)(i); *Grassmeyer v. Sec'y of Health & Human Servs.*, No. 93-2027, 1994 WL 105877, at *1 (6th Cir. Mar. 28, 1994) ("The ALJ properly considered [plaintiff's] daily activities in evaluating her ability to engage in substantial gainful employment." (citing *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993))).  Accordingly, the ALJ did not err when he considered Plaintiff's daily activities as part of his RFC determination.

### 4. The ALJ Did Not Substitute His Own Opinion For That of Plaintiff's Treating Physician

Plaintiff's final argument is that the ALJ improperly substituted his own opinion for that of Dr. Brenda L. Banks, Plaintiff's treating physician.  Specifically, Plaintiff contends that the ALJ erred when he rejected Dr. Banks' opinion that Plaintiff could lift or carry no more than ten pounds and sit or stand no more than two hours in an eight-hour day. (Tr. 23).

Contrary to Plaintiff's contention, the ALJ did not "play doctor" by substituting his own opinion as to the Plaintiff's RFC for that of Dr. Banks. Rather, the ALJ rejected Dr. Banks' opinion regarding Plaintiff's RFC in favor of the opinions of the state agency medical consultants. Although the record contains differing opinions as to Plaintiff's functional limitations, the Court finds that the ALJ properly performed in duty as trier of fact in resolving the conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Therefore, the ALJ did not impermissibly substitute his own opinion for that of Dr. Banks because the ALJ was speaking about residual functional capacity, an area where the ALJ makes the legal decision. *See Roy v. Apfel*, 23 F. App'x 389, 390 (6th Cir. 2001).

## II. CONCLUSION

The record contains substantial evidence supporting the ALJ's assessment of Plaintiff's credibility, his determination of Plaintiff's RFC, and his ultimate finding that Plaintiff is not disabled. Accordingly, for the reasons states,

**IT IS ORDERED as follows:**

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #13) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #14) is hereby **GRANTED**;

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 28th day of September, 2009.

 **Signed By:**
*David L. Bunning*   DB
**United States District Judge**

11